# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| JAMES DUGAN, DAVID SANSONE, and all persons similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | **CLASS ACTION SETTLEMENT AGREEMENT** |
| v. ) ) | |
| THE UPS HEALTH CARE PACKAGE, also known as THE UPS HEALTH CARE PACKAGE FOR RETIRED EMPLOYEES, also known as THE UPS HEALTH CARE PACKAGE FOR RETIREES; UNITED PARCEL SERVICE, INC.; and UNITED PARCEL SERVICE OF AMERICA, INC., Plan Administrator, ) ) ) ) ) ) ) | Civil Action No. 5:10-CV-1151 (NAM/DEP) |
| Defendants. ) ) | |

_____

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

This CLASS ACTION SETTLEMENT AGREEMENT is entered into by and between the *Named Plaintiffs* in the above captioned *Action* for themselves and on behalf of the *Settlement Class,* on the one hand, and *Defendants*, on the other, in consideration of the promises, covenants and agreements herein described, acknowledged by each of them to be satisfactory and adequate.

## <u>RECITALS</u>

**WHEREAS** defendants United Parcel Service, Inc. and United Parcel Service of America, Inc. (collectively, the "*Company*") have maintained a certain medical benefit plan for the benefit of eligible retired employees and their dependents, known as the UPS Health Care Package *a/k/a* the UPS Health Care Package for Retired Employees ("*Plan*"), which is a "welfare

benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("*ERISA*"); and

**WHEREAS**, on September 24, 2010, *Named Plaintiffs* James Dugan and David Sansone filed a Complaint ("*Complaint*"), individually and on behalf of a purported class, asserting various claims for relief under ERISA and the Labor-Management Relations Act, 29 U.S.C. §§ 141-87 ("*LMRA*"), all of which claims have been and remain disputed by *Defendants*; and

**WHEREAS**, the *Named Plaintiffs* and the putative class are all former members of nine local unions affiliated with the International Brotherhood of Teamsters located in upstate New York ("*the Upstate Locals*"); and

**WHEREAS**, representatives of the *Upstate Locals* and the *Company* met, in part, to discuss a negotiated settlement of the issues giving rise to this *Action*; and

**WHEREAS**, on or about October 22, 2010, as a result of the aforementioned discussions, the *Upstate Locals* and the *Company* entered a Memorandum of Understanding ("*Memorandum*") setting forth the terms of an agreement that would resolve the issues raised in the *Complaint*, subject to agreement by the *Named Plaintiffs* and *Defendants* and approval of the Court; and

**WHEREAS**, in anticipation of this agreement becoming final, Plaintiffs and Defendants entered into a Stipulation, entered by the Court on October 25, 2010 ("*Stipulation*"), providing that: (i) effective October 1, 2010, in lieu of the contribution requirements that were previously imposed by the *Plan*, participants or beneficiaries who had been participating in the *Plan* as of October 1, 2010 would be required to contribute One Hundred Twenty-Five Dollars and 00/100 ($125.00) per month, regardless of family status; (ii) The *Plan* would reinstate the coverage of any *Plaintiff* or eligible beneficiary who previously withdrew from the *Plan* or was terminated

2

from the Plan for nonpayment of contributions, provided that the request for reinstatement was made by December 31, 2010; and (iii) notwithstanding the foregoing, any *Plaintiffs* who were reinstated to the *Plan* pursuant to the aforementioned provision would be required to make the $125.00 contributions effective the month in which they were reinstated to the Plan, but not before November 1, 2010;  and

> **WHEREAS**, *Named Plaintiffs* and *Class Counsel* consider it desirable and in *Plaintiffs'* best interests that *Plaintiffs'* claims against *Defendants* be settled on behalf of themselves and the *Settlement Class* upon the terms set forth in the *Memorandum*, and more fully below, and have concluded that such terms are fair, reasonable and adequate, and that this settlement will result in substantial and material benefits to *Named Plaintiffs* and the *Settlement Class*; and

> **WHEREAS**, *Defendants*, while maintaining that they have complied with all of their legal obligations and are otherwise without any fault or liability, and relying on the provisions hereof that this *Settlement Agreement*, consider it desirable to settle with finality the Action upon the terms set forth below;

> **NOW, THEREFORE**, the Parties, in consideration of the promises, covenants and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1. **<u>DEFINITIONS</u>**

    1.1.    "*Action*" shall mean this civil action, *James Dugan, et al. v. the UPS Health Care Package, et al.*, Civil Action No. 5:10-CV-1151, which is pending before the United States District Court for the Northern District of New York.

    1.2.    "*Class Counsel*" shall mean the lawyers and law firms representing the Plaintiffs, including Donald D. Oliver and Brian J. LaClair of Blitman & King LLP.

1.3. "*Defendants*" shall mean the *Company* and the *Plan*, each of which is named as a defendant in the currently pending *Complaint*, filed September 24, 2010.

1.4. "*Effective Date*" shall mean the date thirty (30) days after the *Final Order* becomes *Final*.

1.5. "*Eligible Interim Medical Costs*" shall mean any out-of-pocket costs actually incurred between August 1, 2008 and November 1, 2010 by a *Plaintiff* or eligible beneficiary while not covered under the *Plan*.  "*Eligible Interim Medical Costs*" shall not include any cost or expense that would not otherwise be covered under, or eligible for reimbursement by, the *Plan* had the *Plaintiff* or eligible beneficiary been enrolled in the *Plan* at the time the cost or expense at issue was incurred.  Any contested determination of what constitutes "*Eligible Interim Medical Costs*" shall be within the discretion of plan fiduciaries, as provided under the Plan, and subject to the same claims-review procedures set forth in the *Plan* as if the claim for said costs were made by an eligible participant seeking benefits under the terms of the *Plan*.

1.6. "*Fairness Hearing*" shall mean the hearing scheduled by the Court to consider any objections from the *Settlement Class* to the *Settlement Agreement* and/or to the *Final Order*.

1.7. "*Final*" shall mean with respect to any judicial ruling or order, for which the period for any appeal, motions for reconsideration or rehearing, or petition for certiorari ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a disposition that is in all respects *Final*.

1.8. "*Final Order*" shall mean the Order and Final Judgment to be mutually agreed upon and proposed by the Parties and approved by the Court, in substantially the form attached hereto as Exhibit A.

4

1.9.    "*Parties*" shall mean *Named Plaintiffs* and *Defendants*.

1.10.    "*Plaintiffs*" shall mean *Named Plaintiffs* and each member of the *Settlement Class*.

1.11.    "*Preliminary Order*" shall mean the Order to be mutually agreed upon and proposed by the *Parties* and approved by the Court in connection with the Motion for Preliminary Approval of Settlement which is to be filed by *Named Plaintiffs* through *Class Counsel*, in substantially the form attached hereto as Exhibit B.

1.12.    "*Related Parties*" shall mean each *Defendant's* past, present and future directors, officers, employees, and agents; fiduciaries; insurers; attorneys, accountants, auditors, consultants, and other professional service providers; predecessors and successors-in-interest; and/or parent, subsidiary and affiliate entities.

1.13.    "*Released Claims*" shall mean any and all claims, demands, rights, liabilities and causes of action, in law or in equity, up to and including October 22, 2010, whether known or unknown, by or on behalf of the *Named Plaintiffs* and/or members of the *Settlement Class* and their respective heirs, beneficiaries, executors, administrators, estates, successors and assigns, against any and all of the *Defendants* and *Related Parties*, that were brought or that could have been brought, arising out of or related to any of the events, transactions or occurrences described in the *Complaint*.  The *Released Claims* shall include, without limitation, any claims arising under ERISA and the LMRA, and any and all other state or federal statutes or laws, any and all rules and regulations associated therewith or promulgated thereunder, and/or the common law, together with any claims for attorneys' fees, costs and expenses; *provided, however*, that the *Released Claims* shall not include any claims of any type for benefits pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), based on the application of the terms of the

*Plan* (other than those terms at issue in the underlying lawsuit) to any claim by a participant or beneficiary.

    1.14.   "*Settlement Agreement*" shall mean this Class Action Settlement Agreement.

    1.15.   "*Settlement Class*" shall mean and be defined in the following manner:

> All persons who were participants or beneficiaries in the UPS Health Care Package (a/k/a the UPS Health Care Package for Retired Employees) at any time during the period August 1, 2008 through October 1, 2010.

    1.16.   "*Settlement Notice*" shall mean the Notice of Proposed Settlement of Class Action to be mailed by first class mail to each *Plaintiff* following the Court's issuance of the *Preliminary Order*, in substantially the form attached hereto as Exhibit C.

## 2.    <u>SETTLEMENT CONSIDERATION</u>

    2.1.   <u>Participant Contributions</u>.  Effective October 1, 2010, each *Plaintiff* who is a current participant in the *Plan* shall be responsible for payment of a monthly premium contribution of One Hundred Twenty-Five Dollars and 00/100 ($125.00), regardless of family size or status, to maintain coverage.  Notwithstanding the foregoing, any *Plaintiffs* who are/were reinstated to the *Plan* pursuant to the *Stipulation* shall be required to make monthly premium contributions of One Hundred Twenty-Five Dollars and 00/100 ($125.00), regardless of family size or status, effective with the month of their reinstatement, but not before November 1, 2010.

    2.2.   <u>Accounting for Overpayments/Underpayments</u>.  The *Plan* shall take steps to credit overpayments or to debit underpayments of contributions, on a prospective basis, consistent with the terms of paragraph 2.1

    2.3.   <u>Reinstatement</u>.  The terms of the Stipulation governing the reinstatement of Plaintiffs are incorporated herein by reference.

2.4.   <u>Reimbursement of Eligible Interim Medical Costs</u>.  The *Plan* shall reimburse *Eligible Interim Medical Costs* actually incurred by any *Plaintiff* or eligible beneficiary who (i) withdrew from the Plan between August 1, 2008 and October 1, 2010, or (ii) was terminated from the *Plan* by reason of nonpayment of monthly contributions.  The Company's reimbursement obligation shall be limited to *Eligible Interim Medical Costs* in excess of Five Thousand Dollars and 00/100 ($5,000.00), in the aggregate; *provided, however*, that all costs or expenses included within the above-described $5,000.00 threshold must otherwise qualify as *Eligible Interim Medical Costs*.  Nothing in this provision shall confer on *Plaintiffs*, or any of them, any greater coverage or benefits entitlement than had they remained covered continuously under the *Plan* since August 1, 2008

2.5.   <u>Duration of Current Benefits Levels & Contribution Rates</u>.  The level of retiree-medical benefits currently provided under the *Plan* and the $125.00 monthly contribution rate set forth above shall remain in effect through December 31, 2014; *provided, however*, that until December 31, 2014, *Plaintiffs* shall be entitled to maintain coverage at any lower monthly contribution rate which becomes operative for retiree-medical coverage (*i.e.*, at an identical level of benefits) under the terms of the National Master Agreement between the *Company* and the International Brotherhood of Teamsters.

2.6.   <u>Post-2014 Coverage Under National Master Agreement</u>.  Effective January 1, 2015, any then-current participant in the *Plan* shall be provided retiree-medical coverage on terms that are consistent with those applicable to the "UPS Health & Welfare Package for Retirees," pursuant to the terms of the National Master Agreement (*i.e.*, the successor agreement to the National Master Agreement expiring August 1, 2013).  The applicable terms that will be

7

consistent with terms of the National Master Agreement shall include required contribution amounts, as well as the terms and conditions of coverage.

2.7.    <u>Adjustment Regarding Costs</u>.  Consistent with the intent of this Agreement that the terms of Plan coverage will match those of  "UPS Health & Welfare Package for Retirees," the cap regarding the "average annual cost per participant," as defined in the *Plan's* Enrollment Guide shall be increased to Six Thousand, Two Hundred Fifty Dollars and 00/100 ($6,250.00), effective immediately, notwithstanding that such cap effectively will be inoperative through December 31, 2014, under provisions 2.1 and 2.5 of this Settlement Agreement.

2.8.    <u>No Other Changes to Coverage</u>.  Except as set forth herein, no other benefit or extension of coverage under the *Plan* is intended or implied.

2.9.    <u>No Admission of Liability</u>.  This *Settlement Agreement*, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as an admission on the part of any of the *Defendants* of any liability or wrongdoing whatsoever, or as a concession or an admission of any kind by Plaintiffs of the truth of any fact alleged or the validity of any claim asserted.  *Defendants* expressly deny and Plaintiffs reaffirm each and every claim asserted in the *Action*.

## 3.    <u>RELEASE OF CLAIMS</u>

3.1.    Upon the *Effective Date*, each member of the *Settlement Class* shall be (i) conclusively deemed to have fully and finally settled, released, and discharged each of the *Defendants* and the *Related Parties* from all *Released Claims*, and (ii) barred from suing each of the *Defendants* or the *Related Parties* in any action or proceeding asserting any of the *Released Claims*.

3.2.    Each member of the *Settlement Class* hereby stipulates and agrees with respect to

any and all *Released Claims* that, upon the *Effective Date*, the members of the *Settlement Class*

shall be conclusively deemed to have fully and finally settled, released, and discharged any and

all rights or benefits they may now have, or in the future may have, under any law relating to the

release of unknown claims, including without limitation, Section 1542 of the California Civil

Code, which provides:

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his or
> her settlement with the debtor.

Also, the members of the *Settlement Class* with respect to the *Released Claims* shall be

conclusively deemed to have fully and finally settled, released, and discharged any and all rights

and benefits conferred by any applicable law of any jurisdiction, or any principle of common

law, which is similar, comparable or equivalent in substance to Section 1542 of the California

Civil Code.

## 4.    COURT APPROVAL OF SETTLEMENT

4.1.    Motion for Preliminary Approval of Settlement.  As soon as reasonably possible

following execution of this *Settlement Agreement*, *Named Plaintiffs* acting through *Class*

*Counsel* shall file with the Court a motion seeking preliminary approval of this *Settlement*

*Agreement* and entry of the *Preliminary Order* in substantially the form attached hereto as

Exhibit B.  The *Preliminary Order* to be presented to the Court shall, among other things:

(a)    Certify the *Settlement Class* for settlement purposes only, pursuant to Fed.

R. Civ. P. 23(b)(1) and/or 23(b)(2), and only in such manner as to preclude opt-out election by

members of the proposed *Settlement Class*, which certification shall apply to all counts and

claims asserted in the *Action*;

(b)     Approve the text of the *Settlement Notice* substantially in the form attached hereto as Exhibit C, and deem it sufficient notice to all members of the *Settlement Class*;

(c)     Provide that, pending final determination of whether the settlement embodied in this *Settlement Agreement* should be approved, no *Plaintiff* may directly, representatively, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the *Released Claims* against any of the *Defendants,* the *Related Parties* or the *Plan*;

(d)     Set the *Fairness Hearing* to be held by the Court and a briefing schedule to determine whether the Court should approve (i) the settlement embodied in this *Settlement Agreement* as fair, reasonable and adequate, and (ii) the *Final Order*;

(e)     Provide (unless, in its discretion, the Court shall direct otherwise) that any objections to the settlement embodied in this *Settlement Agreement* shall be heard, and any papers submitted in support of said objections shall be received and considered by the Court at the *Fairness Hearing* only if, on or before the date to be specified in the *Preliminary Order*, persons or entities filing written objections and/or requesting to be heard at the *Fairness Hearing* shall file their objections and/or notice of their intention to appear and copies of any papers in support of their position with the Clerk of the Court and serve such notice and papers on *Class Counsel* and *Defendants' Counsel*; and

(f)     Provide that the *Fairness Hearing* may, from time to time, and without further direct notice to the *Settlement Class*, be adjourned or continued by order of the Court.

10

4.2.   <u>Issuance of Settlement Notice</u>.  Subject to the Court's approval, *Defendants* shall cause to be mailed a *Settlement Notice* by first-class mail, postage prepaid, to each *Plaintiff* at the most current address on file with the *Plan*.

4.3.   <u>Dismissal with Prejudice After Final Order</u>.  Not later than ten (10) business days before the *Fairness Hearing*, the *Named Plaintiffs* through *Class Counsel* shall submit to the Court a motion for entry of the *Final Order*, which shall be in substantially the form attached hereto as Exhibit A, and which shall provide for the following, among other things:

(a)   approval of the class settlement of the claims covered by this *Settlement Agreement*, adjudging the terms of the *Settlement Agreement* to be fair, reasonable and adequate to the *Settlement Class*, and requiring the *Parties* to take the necessary steps to effectuate the terms of the *Settlement Agreement*;

(b)   dismissal with prejudice of the *Action* and all claims asserted therein, whether asserted by *Named Plaintiffs* on their own behalf or on behalf of the *Settlement Class*, without additional costs, fees or other relief awarded to any of the *Parties*;

(c)   that each member of the *Settlement Class* shall be (i) conclusively deemed, by operation of the *Final Order* to have fully and finally settled, released, and discharged *Defendants* and the *Related Parties* from all *Released Claims*, and (ii) barred from suing *Defendants* or the *Related Parties* in any action or proceeding alleging any of the *Released Claims*; and

(d)   the *Parties*' submission to, and the Court's continuing retention of, exclusive jurisdiction over this matter for the purpose of effectuating and supervising the enforcement, interpretation or implementation of this *Settlement Agreement*, and resolving any disputes that may arise hereunder.

11

4.4.   <u>Applicable to All Plaintiffs</u>.  The *Final Order* shall provide that upon its entry all *Plaintiffs* and the *Plan* shall be bound by the *Settlement Agreement* and by the *Final Order*.

**5.   <u>ADDITIONAL SETTLEMENT TERMS</u>**

5.1.   <u>No Effect on the *Plan*</u>.  Except as expressly stated otherwise, nothing in this *Settlement* Agreement is intended to modify *Defendants'* rights and obligations with respect to the *Plan* or to modify, waive or release any *Plaintiff's* entitlement or non-entitlement to participate in or receive benefits under the terms of the *Plan* other than for the *Released Claims*.

5.2.   <u>Adjudication of Participant Disputes</u>.  Any contested determination of *Plaintiffs'* rights to reimbursement or reinstatement shall be subject to the same claims-review procedures set forth in the *Plan* as if the claim for said costs were made by an eligible participant seeking benefits under the terms of the *Plan*, and shall in all other respects by treated as a claim for benefits.

5.3.   <u>Conditional Nature of Settlement</u>.  The *Settlement Agreement* shall be terminated, be deemed null and void, and have no further force or effect if:

(a)   this *Settlement Agreement* is disapproved by the Court or fails to become effective for any reason whatsoever; or

(b)   the Court does not enter both the *Preliminary Order* and the *Final Order* in substantially the form submitted by the *Parties*, or in a form otherwise acceptable to the *Parties;*

(c)   the *Preliminary Order* or *Final Order* is reversed on appeal, or modified on appeal in a manner not acceptable to the *Parties* in any disposition that is *Final*.

In any such case, the *Action* and the claims asserted by *Plaintiffs* shall for all purposes with respect to the *Parties* revert to their status prior to October 22, 2010.

12

## 6.    **MISCELLANEOUS PROVISIONS**

6.1.    <u>Cooperation of Counsel</u>.  The undersigned counsel, on behalf of themselves and the *Parties*, agree to cooperate fully with each other in seeking Court approvals of the *Preliminary Order* and the *Final Order,* and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this *Settlement Agreement* according to its terms.

6.2.    <u>Governing Law</u>.  This *Settlement Agreement* shall be governed by the laws of the State of New York, without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.3.    <u>Severability</u>.  The provisions of this *Settlement Agreement* are not severable.

6.4.    <u>Waiver</u>.  The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

6.5.    <u>Construction</u>.  None of the *Parties* shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

6.6.    <u>Notices</u>.  Any notice, demand or other communication under this *Settlement Agreement* (other than the *Settlement Notice*, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, or sent by certified mail:

IF TO PLAINTIFFS:
Donald D. Oliver, Esq.
Brian J. LaClair, Esq.
BLITMAN & KING LLP
443 North Franklin Street
Suite 300
Syracuse, NY 13204
Phone: 315-422-7111
Fax: 315-471-2623

IF TO DEFENDANTS:
Myron D. Rumeld, Esq.
Russell L. Hirschhorn, Esq.
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
Phone: 212-969-3000
Fax: 212-969-2900

6.7.   Entire Agreement.  This *Settlement Agreement* and its exhibits contain the entire

agreement among the *Parties* relating to the *Action*.

Dated: November 16, 2010

BLITMAN & KING LLP

By: [signature]
Donald D. Oliver, Esq.
Brian J. LaClair, Esq.
443 North Franklin Street
Suite 300
Syracuse, NY 13204

Dated: November 10, 2010

PROSKAUER ROSE LLP

By: [signature]
Myron D. Rumeld, Esq.
Russell L. Hirschhorn, Esq.
1585 Broadway
New York, New York 10036

## PLAINTIFFS' ACCEPTANCE

I HAVE READ THE FOREGOING SETTLEMENT AGREEMENT.  I FULLY
UNDERSTAND IT AND, AFTER CONSULTING WITH LEGAL COUNSEL, I BELIEVE
THE TERMS OF THE SETTLEMENT AGREEMENT TO BE FAIR TO MEMBERS OF THE
CLASS OF PERSONS I HAVE SOUGHT TO REPRESENT IN THE ABOVE-CAPTIONED
ACTION.  I HAVE KNOWINGLY AND VOLUNTARILY SIGNED THIS SETTLEMENT
AGREEMENT ON THE DATE INDICATED, SIGNIFYING THEREBY MY ASSENT TO ITS
TERMS, AND MY INTENTION TO BIND ALL CLASS MEMBERS THEREBY.

Agreed: [signature]
JAMES DUGAN

Date: 11 19 2011

Agreed: [signature]
DAVID SANSONE

Date: 11/19/2011

14